## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**WILLIAM ROBERT YIELDING JR.**                                      **PLAINTIFF**

**v.**                          **Case No. 4:25-cv-01108-KGB**

**CITY OF CABOT,** *et al.*                                      **DEFENDANT**

### ORDER

Before the Court are plaintiff William Robert Yielding, Jr.'s first amended Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and civil rights complaint (Dkt. No. 17), motion for electronic filing waiver (Dkt. No. 14), motion for leave to conduct discovery (Dkt. No. 15), and emergency motion for temporary restraining order and preliminary injunction to preserve electronic evidence (Dkt. No. 16).  Also pending before the Court is defendants City of Cabot, Arkansas, Cabot Police Department, and Does's motion to dismiss (Dkt. No. 3).

The Court previously granted Yielding's motion to proceed *in forma pauperis*, struck Yielding's improperly filed first amended and second amended complaints, ordered Yielding to file an amended complaint that cured the deficiencies in Yielding's operative complaint, denied Yielding's emergency motion for temporary restraining order and motion for preliminary injunction, denied Yielding's motion for permission to file electronically, and held under advisement City of Cabot, Arkansas, Cabot Police Department, and Does's motion to dismiss (Dkt. No. 13).

### I.      Interlocutory Appeal

Preliminarily, the Court addresses Yielding's notice of appeal.  Yielding purported to appeal "every final judgment, order, opinion, memorandum, decision, ruling, dismissal, or adverse

disposition entered in this action" including "[a]ny orders denying or failing to rule on requests for injunctive relief" (Dkt. No. 18, at 1–2). Yielding also purported to appeal other Orders not entered in this case such as "orders imposing sanctions," "[t]he Court's order overruling Plaintiff's objections to the Magistrate Judge's Report & Recommendation," and "[t]he Court's order granting Defendant's motion to Dismiss" (*Id.*). The Court has only entered one Order in this case (Dkt. No. 13).

On February 3, 2026, the Eighth Circuit Court of Appeals dismissed this appeal for lack of jurisdiction (Dkt. No. 22). Further, even while the issues Yielding appealed were pending with the Eighth Circuit, this Court continued to exercise jurisdiction over Yielding's remaining claims. *See Parada v. Anoka Cty.*, Case No. 18-795 (JRT/TNL), 2020 WL 6488794, at 2 (D. Minn. Nov. 4, 2020) ("Although Sheriff Stuart's interlocutory appeal is pending with the Eighth Circuit, the remaining claims can and should be resolved without further delay.").

## II.    Operative Complaint

Yielding filed an amended complaint within the appropriate timeframe (Dkt. No. 17). In his amended complaint, Yielding alleges: (1) violations of RICO and specifically 18 U.S.C. § 1962 (c), (d); (2) violations of Yielding's constitutional rights under 42 U.S.C. § 1983; (3) conspiracy to deprive civil rights in violation of 42 U.S.C. § 1985(3); (4) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), 12132; and (5) violations of the Arkansas Constitution (*Id.*, at 1).

To support his claims, Yielding alleges that "Defendants have converted the Cabot District Court into an illegal revenue-generating machine" (*Id.*). Yielding alleges that "Judge Clint McGue is physically absent from the courtroom," that "non-judicial clerks—without oath, authority or supervision—conduct plea colloquies, accept guilty pleas, and impose sentences," that

"Defendants destroy or alter audio/video records to conceal the absence of the judge," and that "persons who object (including [Yielding]) are subjected to false arrest, evidence destruction, and ADA-based courtroom exclusions" (*Id.*, at 1–2). Yielding further alleges that defendants are engaged in "an 'enterprise' within the meaning of 18 U.S.C § 1961(4)" with the City of Cabot, Arkansas, being the municipal entity, Judge McGue being the enterprise leader, the clerk's office and Berneck being the day-to-day operators, police officers being the executors of unlawful arrests to protect the scheme, and unknown Does being the destroyers of exculpatory recordings (*Id.*, at 2). Yielding states that "[e]ach predicate act was committed within the past 10 years" in Cabot, Austin, and Ward District Courts and "is related, continuous, and poses a threat of future repetition" (*Id.*, at 3).

In asserting his eight claims for relief, Yielding also alleges that: (1) "Defendants knowingly agreed to the same pattern of racketeering"; (2) clerks acting without judiciary authority violated Yielding's right to proceedings before a judge; (3) officers arrested Yielding "without probable cause to punish him for informing of civil rights violations on the traffic stop"; (4) "Defendants destroyed or allowed destruction of Axon body-cam and courtroom DVR files to impair [Yielding's] civil claims"; and (5) "Defendants denied [Yielding] meaningful access to the courtroom and failed due to foot wear, even though a disability was observed 'disruptive'" (*Id.*, at 3–4).

### III.    Screening

Yielding is not incarcerated pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915. However, the Court must screen Yielding's complaint to determine whether it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2); *Key v.*

*Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016) ("Although some district courts have limited section 1915(e)(2)(B)(ii) pre-service dismissal to litigants who are prisoners, . . . all of the circuit courts to address the issue have held that nonprisoner complaints can be screened and dismissed pursuant to section 1915(e)(2)(B).") (citing *Michau v. Charleston City, South Carolina*, 434 F.3d 725, 728 (4th Cir. 2006); *Lister v. Department of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005); *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) *overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)).

A complaint fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a pro se complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). The complaint, however, must still allege specific facts sufficient to support a claim. *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985).

For the reasons that follow, the Court dismisses without prejudice all of Yielding's federal claims for failure to state sufficiently claims upon which relief can be granted. Having been granted IFP status, Yielding is entitled to have the United States Marshals serve his complaint. 28

U.S.C. § 1915(d).  Given the Court's determinations regarding Yielding's claims, the Court also determines that service of Yielding's complaint as to any defendant is not appropriate at this time.

### A.    RICO

#### 1.    Legal Framework

18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."  18 U.S.C. § 1962(c).  "A violation of § 1962(c) requires appellants to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) (footnote omitted)).  To state a claim for relief, a plaintiff must allege each of the RICO elements, *Crest Constr. II, Inc. v. Doe,* 660 F.3d 346, 355 (8th Cir. 2011), to each individual defendant, *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).

"RICO does not cover all instances of wrongdoing."  *Crest Constr.,* 660 F.3d at 355.  "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity."  *Id.*  "A RICO claim must be pleaded with particularity under Rule 9(b)."  *Id.*  "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity."  *Id.*  In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how:  the first paragraph of any newspaper story."  *Id.* (quoting *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011) (alteration in original) (citations and internal quotation marks omitted).  "General allegations of inter-governmental cooperation and use of phrases like 'buy in' are not enough to formulate a RICO claim."  *Gallagher v. Magner,* 619 F.3d 823, 842 (8th Cir. 2010).

"A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Crest Constr. II,* 660 F.3d at 354 (quoting 18 U.S.C. § 1961(4)).  To assert the existence of an association-in-fact enterprise, the Supreme Court requires three criteria to be satisfied:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  However, acts taken "independently and without coordination" cannot establish the existence of an enterprise.  *Id*. at 947 n.4; *see Target Corp. v. LCH Pavement Consultants*, LLC, Case No. 12-cv-1912 (JNE/JJK), 2013 WL 2470148, at 4 (D. Minn. June 7, 2013) ("[A]n association-in-fact enterprise requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it requires those associated with the enterprise to function as a unit, that they be put together to form a whole.") (citing *In re Ins. Brokerage Antitr. Litig.*, 618 F.3d 300, 374 (3d Cir. 2010)) (cleaned up).

### 2.    Analysis

Yielding fails to plead sufficiently his RICO claim in compliance with Rule 9(b)'s heightened pleading standard.  Yielding's vague allegations regarding Judge McGue's absence in the courtroom, unnamed clerks conducting judicial activities, and generalized allegations regarding the destruction of evidence do not plead the "who, what, when, where, and how" as required by Rule 9(b), *Crest Constr.,* 660 F.3d at 355, and such "[g]eneral allegations of inter-governmental cooperation . . . are not enough to formulate a RICO claim."  *Gallagher*, 619 F.3d at 842

Further, Yielding alleges that the "racketeering" activities he complains of—obstruction of justice, mail and wire fraud by "transmitting fraudulent docket entries and fee orders through ECF

6

and postal mail," and "extortion under color of official right"—occurred between 2016 and 2026 and in Cabot, Austin, and Ward District Courts. Yielding alleges no specific activities conducted in Austin District Court or Ward District Court, no timeline of events that occurred in any court, and no specific instances of any alleged racketeering event. Simply stated, Yielding fails to allege with particularity facts which would support his RICO claim. Therefore, Yielding fails to state a claim upon which relief could be granted as to his RICO claim against defendants.

**B.      Section 1985 Claim**

**1.      Legal Framework**

Yielding brings his conspiracy to deprive civil rights claims pursuant to 42 U.S.C. § 1985(3). To state a claim of conspiracy under § 1985(3), a plaintiff must show:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive [him] either directly or indirectly of [his] civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999).

A plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). This standard requires that "allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Id.* (alteration in original) (internal citations omitted).

Further, the plaintiff must allege that the conspiracy was fueled by "class-based, invidiously discriminatory animus." *Andrews v. Fowler,* 98 F.3d 1069, 1079 (8th Cir. 1996)

7

(quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, (1993)); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986).

### 2.    Analysis

As with Yielding's RICO claims, Yielding fails to allege with particularity any facts which suggest that the parties reached an agreement to act in an unconstitutional conspiracy.  As discussed, while Yielding generally alleges that Judge McGue was absent from the courtroom, that non-judicial clerks conducted judicial activities, and that unnamed Does and officers destroyed evidence, Yielding fails to allege any specific instances of such conduct and fails to allege any facts which suggest that such actions were done as a result of an agreement between the parties. Yeilding's allegations do not "suggest a meeting of the minds directed toward an unconstitutional action" even when accepted as true.  *Kelley*, 813 F.3d at 1077–78.

Further, Yielding does not allege that any such conspiracy was fueled by class-based, invidiously discriminatory animus.  In fact, Yielding does not allege that he is a part of any class. Therefore, Yielding fails to state a claim upon which relief could be granted as to his § 1985(3) claim against defendants.

### C.    ADA

#### 1.    Legal Framework

Under the ADA:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C § 12132.  The ADA defines a disability as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"  42 U.S.C. § 12102(1); 29

C.F.R. § 1630.2(g).  "To be regarded as disabled under the ADA, an individual must show that [he] has an impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation."  *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 924 (8th Cir. 2001) (citing 29 C.F.R. § 1630.2(l)(1)).

### 2.    Analysis

The only allegations Yielding makes related to his ADA claim are:  (1) that "Defendants denied [Yielding] meaningful access to the courtroom and failed due to foot wear, even though a disability was observed 'disruptive'"; and (2) that "persons" are subjected to "ADA-based courtroom exclusion" (Dkt. No. 17, at 2, 4).  Even construing Yielding's complaint liberally, Yielding fails to allege sufficiently that he has a disability or that such a disability substantially limited a major life activity as is required to be a qualified individual with a disability to whom the ADA applies.

His generalized allegations that "persons" are subjected to "ADA-based courtroom exclusions" and that he was denied "meaningful access to the courtroom and failed due to foot wear even though a disability was 'observed'" are insufficient, even when taken as true, to allege that he is a qualified individual.  *See Scheffler v. Dohman*, 785 F.3d 1260 (8th Cir. 2015) (affirming the district court's dismissal of an ADA claim for lack of a pleaded disability when the plaintiff alleged that he drove while intoxicated multiple times but did not allege that he was an alcoholic or that alcoholism caused him to be substantially limited in a major life activity); *Carlton v. Union Pac. R.R. Co.*, Case No. 8:23-cv-0211, 2023 WL 6388021, 7–9 (D. Neb. Sep. 29, 2023) (finding that a plaintiff did not sufficiently plead having a disability under the ADA when he alleged having seizures on multiple occasions but did not assert that he had been diagnosed with a seizure disorder or alleged a substantial imitation to a major life activity due to a seizure disorder)*; Brundy v. Union*

9

*Pac. R.R.*, Case No. 8:23-cv-238, 2023 WL 6621112, 9 (D. Neb. Oct. 11, 2023) (finding that a plaintiff had "not alleged sufficient factual content that allows the court to draw the reasonable inference" that the plaintiff had a disability when the plaintiff alleged eye conditions but failed to allege that it substantially limited a major life activity).

Therefore, Yielding fails to state a claim upon which relief could be granted as to his ADA claim against defendants.

### D.   Section 1983 Claims

#### 1.   False Arrest And Retaliation

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "A traffic stop is considered a seizure for Fourth Amendment purposes." *United States v. Guevara*, 731 F.3d 824, 828 (8th Cir. 2013). "Generally, the decision to stop an automobile does not violate the Fourth Amendment as long as the officer has probable cause to believe that a traffic violation has occurred." *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the . . . officer at the time . . . ." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Yielding alleges that "[o]fficers arrested [Yielding] without probable cause to punish him for informing of civil rights violations on the traffic stop," but provides no other information as to who the officers were, when the traffic stop occurred, to what civil rights violations he is referring, or when he was arrested. Yielding's "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not allege facts sufficient to support his claim for a violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Martin,* 780 F.2d at 1337. Yielding does not allege "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010). Therefore, Yielding fails to state a claim upon which relief could be granted as to his Fourth Amendment claims against defendants.

### 2. Denial Of Right To Judicial Process And Evidence Destruction

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "The opportunity to be heard is an essential requisite of due process of law in judicial proceedings." *Richards v. Jefferson Cty.*, 517 U.S. 793, 797 n.4, (1996).

"Suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Yielding's remaining § 1983 claims allege violations of the Fourteenth Amendment. Specifically, Yielding brings claims of "Denial of Right to Judicial Process" and "Evidence Destruction." Yielding alleges that "[c]lerks acting without judicial authority violated [Yielding]'s Fourteenth Amendment right to proceedings before an actual judge" and that "Defendants destroyed or allowed destruction of Axon body-cam and courtroom DVR files to impair [Yielding]'s civil claims, violating the Fourteenth Amendment" (Dkt. No. 17, at 4).

11

First, as to Yielding's "Denial of Right to Judicial Process" claim, while the Court acknowledges that Yielding has a right to an "opportunity to be heard" in his state criminal proceedings, his vague and conclusory allegation that clerks violated his right to proceedings before an actual judge is insufficient to state a claim for which relief can be granted under the Fourteenth Amendment.  Without specific facts to support his claim, Yielding's "Denial of Right to Judicial Process" claim fails to state a claim upon which relief can be granted and must be dismissed.  *Twombly*, 550 U.S. at 570 (2007).

Second, as to Yielding's "Evidence Destruction" claim, Yielding fails to allege any facts suggesting bad faith on the part of any unnamed officers, instead stating only that they "destroyed or allowed destruction" of certain evidence.  Further, Yielding fails to plead any factual allegations as to what evidence is on the "Axon body-cam and courtroom DVR files," much less plead how such evidence is "material either to guilt or to punishment."  *See Wess v. Md. Heights Police Dep't,* Case No. 4:23-cv-00273-HEA, 2023 WL 3933693, 12 (E.D. Mo. June 9, 2023) (dismissing plaintiff's Fourteenth Amendment claim and stating that, "while plaintiff insists that Officer Heimberger prevented evidence from being created, he does not provide any facts indicating that this alleged evidence was material to his guilt or punishment in his criminal case.").  Without alleging that the destruction of evidence was done in bad faith or that the evidence allegedly destroyed was material to guilt or punishment in his criminal case, Yielding fails to state a claim for "evidence destruction" upon which relief could be granted.

Therefore, Yielding fails to state a claim upon which relief could be granted as to any of his § 1983 claims against defendants.

### E.   State Law Claims

"'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point towards declining to exercise jurisdiction over the remaining state-law claims.'"  *King v. City of Crestwood, Missouri*, 899 F.3d 643, 651 (8th Cir. 2018) (internal citation omitted).  Having found that Yielding has failed to state a claim on which he is entitled to relief under any of his federal causes of action, the Court declines to exercise supplemental jurisdiction over Yielding's state-law claims because no live federal claims remain in this case.  28 U.S.C. § 1367.

### IV.   Temporary Restraining Order And Preliminary Injunction

Because Yielding has not sufficiently pled any of his federal claims to initiate this lawsuit, the Court denies Yielding's motion for temporary restraining order and motion for preliminary injunction to preserve electronic evidence (Dkt. No. 16).  Even if this Court were to evaluate Yeilding's motion for temporary restraining order and motion for preliminary injunction to preserve electronic evidence on the merits, the Court would deny the motions on the record before it based on controlling law (*Id.*).

When determining whether to grant a motion for a temporary restraining order or preliminary injunction, this Court considers the same factors:  (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest.  *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (*citing Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)).  Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of establishing the four *Dataphase* factors.  *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  The focus is on

13

"whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id*.  In deciding whether to grant preliminary injunctive relief or a temporary restraining order, likelihood of success on the merits is most significant.  *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012).

Here, Yielding alleges insufficient facts to support his motion for temporary restraining order and motion for preliminary injunction to preserve electronic evidence (Dkt. No. 16). Yielding asks the Court to "enjoin[] Defendants, their employees, agents, and vendors from destroying, overwriting, deleting, or altering any ESI described in Ex. A" (*Id.*, at 2).  Yielding alleges that:  (1) "Defendants automatically overwrite prior recordings 30-day or shorter cycle"; (2) on January 22, 2026, Yielding "served Defendants with Plaintiff's First Rule 34 Requests for Production (attached as Ex. A) and a proposed anti-spoliation order"; and (3) defendants' counsel responded that "they would 'review the requests'" (*Id.*).  There is no Exhibit A attached to Yielding's filing.

With regard to a party's duty to preserve evidence, the explanation provided by the Minnesota district court in *Valspar v. Millennium Inorganic Chemicals, Inc*. is instructive.

> Generally, there is no duty to preserve evidence or documents unless a party possessing the evidence has notice of its relevance." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 189 F.R.D. 76, 81 (S.D.N.Y. 1999).  "Usually such notice is provided when suit has been filed, 'providing the party responsible for destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'" *Id.* (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y.1991)). . . .
>
> The Court's review of the caselaw indicates that a defendant's duty to preserve evidence with regard to a case is most often triggered at the time the case is filed, unless the defendant before that time becomes aware of facts from which it should reasonably know that evidence is to be preserved as relevant to future litigation. *See, e.g., In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502,

512 (S.D.W. Va. 2014) ("It is well established that the duty [to preserve evidence] is triggered, at the latest, when the defendant is served with the complaint.") (citation omitted); *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 174 (E.D.N.Y. 2009) (defendant's duty to preserve arose when received notice of discrimination suit filed against it); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 624 (D. Colo. 2007) (concluding that defendant's duty to preserve documents was triggered by filing of suit, and noting that, in some cases, duty may be triggered earlier when defendant has reason know that litigation was likely); *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005) (defendant's duty to preserve evidence triggered on the filing of the complaint); *but see E\*Trade*, 230 F.R.D. at 589 (duty to preserve evidence triggered for corporate subsidiary when it received notice of commencement of a suit involving actions by corporate parent, even though suit had not actually been commenced at that point against the subsidiary itself); *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005) (defendant's duty to preserve evidence triggered when it was notified of sexual harassment and retaliation complaints at least thirteen months prior to filing suit); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (defendant's duty to preserve evidence triggered four months before commencement of litigation, when the relevant people at the defendant corporation actually anticipated litigation).

Case No. 13-CV-3214 (ADM/LIB), 2016 WL 6902459, at \*4 (D. Minn. Jan. 20, 2016).

As a practical matter, at this point in the litigation, Yielding has failed to allege sufficiently facts to support claims upon which relief can be granted. The Court declines to order service of Yielding's claims, as a result. In addition, Yielding presents no allegation or record evidence to suggest that any potential defendant has been derelict in the duty under the Federal Rules of Civil Procedure to preserve evidence. Yielding makes no allegation as to his likelihood of success on the merits, nor does he make any allegation on the public interest. Yielding has not alleged sufficient facts nor demonstrated a likelihood of success on the merits which would permit the Court to issue a preliminary injunction or temporary restraining order such as the one he seeks in this case. Accordingly, at this stage, the Court denies Yielding's motion for temporary restraining order and motion for preliminary injunction to preserve electronic evidence (*Id.*).

## V.   Other Motions

Because the Court has dismissed all of Yielding's federal claims and declined to retain jurisdiction over Yielding's state law claims, the Court denies Yielding's motion for leave to conduct discovery (Dkt. No. 15).  The Court also denies as moot the City of Cabot Arkansas, Cabot Police Department, and Does's motion to dismiss (Dkt. No. 3).

As discussed in the Court's previous Order, the United States District Court for the Eastern District of Arkansas does not permit *pro se* parties to file electronically through CM/ECF. Therefore, the Court denies Yielding's motion for electronic filing waiver (Dkt. No. 14).

## VI.   Conclusion

For the foregoing reasons, the Court:

(1)   dismisses Yielding's federal claims without prejudice and declines to retain jurisdiction over Yielding's state claims (Dkt. No. 17);

(2)   denies as moot the City of Cabot Arkansas, Cabot Police Department, and Does's motion to dismiss directed to Yielding's initial complaint, given the filing of Yielding's amended complaint (Dkt. No. 3);

(3)   denies Yielding's motion for electronic filing waiver (Dkt. No. 14);

(4)   denies as moot Yielding's motion for leave to conduct discovery (Dkt. No. 15); and

(5)   denies Yielding's motion for temporary restraining order and motion for preliminary injunction to preserve electronic evidence (Dkt. No. 16).

It is so ordered this 17th day of March, 2026.

_____
Kristine G. Baker
Chief United States District Judge

16